[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1091 
Charles Martin, appellant here, and owner of Meadow Lane Apartments, filed a declaratory judgment action urging the trial court to find unconstitutional a municipal ordinance providing for the collection and disposal of garbage and the assessment of fees for providing such service. Alternatively, he asked that the ordinance not be considered compulsory in nature.
The ordinance in question reads in pertinent part as follows:
 AN ORDINANCE FOR THE LEVY AND COLLECTION OF FEES FOR THE COLLECTION OF GARBAGE IN THE CITY OF TRUSSVILLE, ALABAMA.
. . . . .
 SECTION 1. (a) A garbage collection, hauling, and disposal service shall be conducted and performed by City forces within the City of Trussville, Alabama (hereinafter referred to as "City").
. . . . .
 1). The persons occupying each single family dwelling unit and each unit of a duplex where the City furnishes such collection service, shall pay to the City of Trussville a fee per residential unit as follows:
 Per month $ 3.00 per unit If paid annually (in advance) 30.00 per unit
 2). Where the City furnishes such collection service, each apartment owner shall pay a fee for each apartment residential unit as follows:
 Per month per unit $ 2.50 If paid annually (in advance) 25.00
 There will be one garbage pick up station for each 25 apartment units, or major fraction thereof, or one garbage pick up station for apartment of less than 25 units.
. . . . .
 (g) The services and assessments herein provided will be mandatory for all classes and categories as described in this ordinance. [Emphasis added.]
After hearing oral testimony, considering evidence presented, and reviewing the parties' briefs, the trial court rendered its judgment. It found that the city had authority to levy a garbage service fee based upon Code of Alabama 1975, §11-47-135 and § 22-27-1 through § 22-27-7 respectively. These sections read in part:
 § 11-47-135. Establishment of incinerators, etc., for disposal of garbage, etc.; hauling and disposal of garbage and trash; fees.
 All cities and towns of this state shall have the power to establish and maintain incinerators for the destruction of garbage and like substances or to otherwise dispose of garbage, either within or without the city limits, and to haul or cause to be hauled to such incinerators or other places of disposal trash and garbage of all kinds and cause the destruction of the same in such manner as may be deemed expedient by the proper municipal authorities and to fix and collect such reasonable fees as may be necessary to carry out the provisions of this section. [Emphasis added.]
 § 22-27-5. Authority of localities to establish charges, fees, etc., and enter *Page 1092 
into mutual agreements or contracts; licensing of private or corporate agencies; nonpayment of fees, etc.
 (a) Fees, etc.; mutual agreements or contracts. —
The county commission or municipality undertaking the responsibility for providing services to the public under this article may establish fees, charges and rates and may collect and disburse funds within cooperating areas or districts, inside or outside the corporate limits of municipalities or inside or outside of county boundaries, for the specific purpose of administering this article and providing and operating a solid waste program. [Emphasis added.]
The trial court further found that garbage fees authorized by the Solid Wastes Act (i.e., §§ 22-27-1 through 22-27-7) were mandatory in the absence of the exception provided for in §22-27-3 (e). This section reads:
 (e) Exception. — A household, business, industry or any property owner may store, haul and dispose of his own solid wastes on his own land or otherwise, provided such storage, haulage or disposal is accomplished pursuant to a certificate of exception as provided in this subsection.
The trial court rejected Martin's contention that the imposition of the garbage fee on owners of apartments andoccupants of single family dwellings amounted to a denial of equal protection under the state and federal constitutions. The trial court also, in effect, rejected Martin's contention that he had been denied due process of law because he was required to pay for each apartment owned regardless of occupancy by adopting a construction of the ordinance that required the owner of an apartment house to pay the garbage assessment only for a rented apartment. The trial court noted that the City of Trussville, in its brief, stated that the policy of the city was not to assess a garbage fee for unoccupied apartments, and the trial court observed that it saw no reason to construe the ordinance in a manner contrary to such policy. The trial court further found the garbage fees reasonable and ordered the sum of $1,205 paid into the court by Martin to be used to pay the City of Trussville for garbage collection from March 1, 1977 through July 1977.
Martin filed a motion for new trial which was denied. From the final judgment Martin appeals.
Martin raises six issues for review: (1) whether the city ordinance violates the equal protection clauses of the United States Constitution (Amend. XIV, § 1) and Alabama Constitution of 1901 (art. I, §§ 1, 6 and 22); (2) whether the ordinance violates due process of law; (3) whether the ordinance is a taxation ordinance exceeding the powers of taxation granted to a municipal corporation; (4) whether the trial court erred in finding the ordinance mandatory and that citizens must use the garbage service; (5) whether the mandatory language of section 1 (g) of the ordinance is so vague and ambiguous as to be void; and (6) whether the trial court erred in relying on and citing material contained in the city attorney's trial brief when such was not formally in evidence.
As to the issue of whether the municipal corporation exceeded its taxation authority, we note 71 Am.Jur.2d State and LocalTaxation § 11 (1973) recognizes that all revenue received by a city is not "accurately" characterized as a tax. A charge for removing garbage is listed among items which may not be regarded as a tax. Oral testimony reveals the ordinance was passed to defray the costs of garbage collection. The charge involved is actually a fee for a service provided by the city which had previously been provided at no cost to its citizens. Consequently, we will consider the garbage charge in this case a "service charge" rather than a tax. See: City of Lake Charlesv. Wallace, 247 La. 285, 170 So.2d 654 (1964).
Martin relies primarily upon the case of City of Russellvillev. Citizens Bank and Savings Co., 207 Ala. 348, 92 So. 469
(1922) for his position that the ordinance in question is outside the power of the municipal authority. A careful reading of that case shows the supreme court decided the city *Page 1093 
could not tax for the collection of garbage. However, please note that the statutory provision involved in that case provided for the establishment of crematories and the city did not maintain crematories. We, therefore, consider the supreme court's decision that no tax could be imposed to be based on the failure to abide by the statute.
More importantly, we find Code of Alabama 1975, § 11-47-135
authority for the city to levy a fee for garbage collection because it specifically provides that a city shall have the power to collect and dispose of garbage and to fix and collect reasonable fees therefor. In addition, Code of Alabama 1975, §22-27-5 (a) provides for a municipality to establish fees for the purpose of administering and operating a solid waste program.
Martin argues that no mandatory language appears in either §11-47-135 or § 22-27-5 to support the ordinance's mandatory provisions regarding the services or assessment. As previously noted herein, § 22-27-3 (e) provides for a certificate of exception which allows a household, business, industry or any property owner to dispose of his own solid wastes. In the absence of evidence that Martin applied for or received a certificate of exception, we find the fees in the instant case mandatory and point out that the trial court also held that "without the exception," the garbage fees are mandatory.
An analagous situation was dealt with in the City of LakeCharles case. There the appellant objected to the garbage ordinance because it was compulsory. The Louisiana Supreme Court upheld the validity of the ordinance. Testimony indicated that if non-use was established by the city, the charge would not be billed. However, anyone who had garbage must use the service and pay the charge.
In disposing of the fifth issue of whether the language of the mandatory provision 1 (g) of the ordinance is so vague and ambiguous as to be void, we recognize that when construing a city ordinance, we should apply the same rules of construction as used to construe statutes. City of Birmingham v. StacyWilliams Co., Ala., 356 So.2d 608 (1978).
When a statute is of doubtful meaning, we will adopt a reasonable and just construction. Ex parte Alabama PublicService Commission, 268 Ala. 322, 106 So.2d 158 (1958). Each description of the category to be charged in the ordinance includes the language "where the City furnishes such collection services." When this language is read together with the provision that the "services and assessments will be mandatory for all classes and categories described in this ordinance," we find it reasonable to conclude that if services are furnished, then the fees are mandatory. We further find it reasonable to conclude that services are mandatory unless a person obtains a certificate of exception under § 22-27-3 (e) of the Code of Alabama 1975.
Martin contends the ordinance violates equal protection because it taxes apartment owners while charging occupants of each single family dwelling or duplex. In addition, he contends that the city's procedures used in implementing the garbage collection ordinance violate his right to equal protection. We disagree.
As argued by Martin, whether municipal ordinances accord equal protection depends largely on the classifications and categories established by the ordinance. In support of this argument he cites us to the case of Woco Pep Co. v. City ofMontgomery, 213 Ala. 452, 105 So. 214 (1925), wherein the supreme court sets out the tests which such classifications must meet. These tests are designed to ascertain whether the persons in a class are treated equally, whether the class is germane to the purpose of the ordinance and whether it is unduly oppressive or restrictive of the membership of the class.
The tests also include a requirement that the establishment of classes be based on distinctions which make one class different from another. The facts in the case sub judice show that the City of Trussville enacted the ordinance in question in order to *Page 1094 
establish a mandatory garbage pickup and disposal service to be provided by the city at a price that was calculated to defray the cost of the service and no more.
According to the evidence, the creation of the categories or classes of users for purposes of assessing the costs of the service was based on the estimated cost of providing the service. Three categories were established: (1) private residences and duplexes; (2) business establishments; and (3) apartments.
The testimony was to the effect that pickups were made from individual residences and duplexes by taking bags of garbage from the street side of these buildings, that large containers were provided for the business establishments because of the quantity of garbage to be disposed of, and that several pick-up areas were provided at the apartment complex in question to facilitate collection and minimize cost.
There was additional testimony that the element of cost was a deciding factor in placing the burden of payment of the garbage fee on the apartment owner rather than the occupant of a particular apartment. By billing the apartment owner, one bill is sent; otherwise 96 bills would be sent, assuming complete occupancy.
We conclude that the categories of the ordinance were germane to its purpose. We further conclude that the members of each class were treated equally and reasonably and not oppressively; and that the different classes were based on substantial, valid distinctions.
Next, Martin says that he has been denied due process of law in that he is billed for all of the apartments whether they are occupied or not. He also contends that the fees charged apartment owners for garbage collection have no reasonable relationship to the cost of collecting the garbage.
Appellee asserts that the ordinance does meet due process requirements and that Martin is not deprived of his property unconstitutionally by being required to pay the assessed fees regardless of the occupancy of all of his apartment units since the appellant derives benefit from the collection and disposal of garbage, not only from his apartment complex, but also from the surrounding neighborhood. The problem sought to be solved by the City of Trussville is a health problem and the cost of the solution is to be shared by all in the community. We agree with appellee that the regulatory scheme sought to be implemented by the enactment of the ordinance in question was to protect the health of the citizens of Trussville by collecting and disposing of garbage so as to minimize the occurrence of disease. The ordinance was not designed merely as a convenience for the residents of Trussville to have their garbage removed and disposed of at minimal cost — although this will be the principal effect — but was intended to remove a potential source of disease from the city. See City of Hobbsv. Chesport, Ltd., 76 N.M. 609, 417 P.2d 210 (1966). This conclusion aside, Martin's argument still could not prevail because the trial court construed the ordinance in question to mean that apartment owners would be expected to pay the garbage fee only for the apartments that were rented.
As to Martin's argument that the fees charged apartment owners have no reasonable relationship to the cost of providing the garbage collection service, the testimony in the instant case supports the conclusion that the fees charged by the City of Trussville for the collection and disposal of garbage resulted in slightly more income from the service than it cost to provide the service. The evidence was to the effect that the city never intended that the fees charged for garbage collection and disposal ever amount to any more than enough to satisfy the costs of providing the service.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
 ON REHEARING
On rehearing appellant says that we failed to consider his issue number six wherein he had complained that the trial judge had relied on material that was contained in the city's trial brief and was not a *Page 1095 
part of the evidence. We did consider this issue but did not write to it because we did not consider it meritorious; however, since appellant insists that the case be reversed because of this aspect of the trial judge's decree, we will write to it.
To begin, we disposed of appellant's due process argument in the original opinion, based primarily on the conclusion that requiring the apartment owner to pay a garbage fee based on the number of apartments regardless of occupancy was due to the benefits resulting from the collection and disposition of garbage inuring both to the owner and to the community.
Only as a secondary premise for concluding that due process requirements had been met did we mention that the trial court had construed the ordinance to mean that the garbage fee would be collected only from apartments that were rented.
The trial court, in its decree, held that the evidence showed that appellant was billed for the total number of apartments and that the evidence failed to show any vacancies. The court further opined that the mere failure of the ordinance to be more specific concerning vacant apartments should not invalidate it if the ordinance could be given a construction consistent with constitutional principles. The trial court proceeded to find that the ordinance could be construed consistent with the constitution. However, the court did say that the city in its brief stated that no fee is assessed if the apartment is not occupied and that the court did not consider "it necessary to render an opinion on the application of the ordinance regarding vacant units without the City's construction."
In view of the several reasons given by the trial court for holding that appellant had been accorded due process in the assessment of the garbage fees, we cannot say that the trial court erred to reversal by giving as one of its reasons the policy of the city not to collect garbage fees on vacant apartments, which policy was stated in its trial brief. If such be error, it is error without injury. Rule 45, ARCP.
OPINION EXTENDED AND CORRECTED.
APPLICATION FOR REHEARING OVERRULED.
WRIGHT, P.J., and HOLMES, J., concur.